BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE CAPITAL UNDERWRITERS, INC.        )        Docket No. 356
SECURITIES LITIGATION                   )

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD*,
EDWIN A. ROBSON, STANLEY A. WEIGEL*, ANDREW A. CAFFREY AND
ROY W. HARPER, JUDGES OF THE PANEL

PER CURIAM

This litigation consists of nine actions pending in
three federal districts: three in the Northern District
of California (Mendelsohn, McDonald and Wheeler); four in
the District of New Jersey (Jala I, Jala II, Johnson and
Francis); and two in the District of Hawaii (Batey and
Carter). The claims in each action arise out of alleged
fraudulent conduct in the sale of limited partnership interests
in one or more real estate projects marketed by Capital Under-
writers, Inc., its affiliates and representatives, and/or
the alleged misuse of funds received in the sale of these
partnerships. One of the New Jersey actions also involves,
inter alia, alleged misrepresentations concerning the intended
use for one of those projects of proceeds from the sale
of a debenture issued by Capital Holdings, Inc., a corporation
affiliated with Capital Underwriters. The investments allegedly
were generally made after personal contacts with officers

* Judges Weinfeld and Weigel did not participate in the
decision of this matter.

or employees of Capital Underwriters or with representatives
of certain investment firms, and the receipt of a variety
of written documents.  Gary L. DiGirolamo, Capital Underwriters'
president, is a defendant in all actions. Capital Underwriters
is a defendant in all but one action, and Capital Holdings
is a defendant in all but two actions.[1]

Mendelsohn and McDonald, both pending in the Northern
District of California before the Honorable William H. Orrick,
Jr., were filed in, respectively, 1975 and 1976, and have
been consolidated for all purposes since September 1976.
The named plaintiffs in these actions seek to represent
a class of all persons who, between 1972 and 1975, purchased
interests in one or more of eleven different limited partner-
ships purportedly created to finance real estate developments
in Hawaii and Guam.  On October 27, 1978, Judge Orrick held
a hearing concerning, inter alia, the class determination
requests, and deferred ruling on these requests.

---

[1] In addition to the nine actions before the Panel, other
related actions have been filed in both federal and state
courts. The Securities and Exchange Commission (SEC) has
filed a civil action in the District of Hawaii against Capital
Underwriters, DiGirolamo, Capital Underwriters' predecessor
corporation, and Capital Holdings. That action is still
pending.  DiGirolamo has plead guilty to several felony
counts of a multiple count federal securities law indictment
in the District of Hawaii, and he has been indicted there
for evasion of federal income taxes.  Numerous private civil
actions have been filed in state courts in New Jersey and
Hawaii.

Named as defendants in both Mendelsohn and McDonald are DiGirolamo, Capital Underwriters, several present or former directors of Capital Underwriters, and a number of other individuals and entities allegedly associated with DiGirolamo. McDonald also includes certain attorney and accountant defendants. The complaints in both actions allege, inter alia, that the defendants participated in a scheme to sell interests in limited partnerships for non-existent real estate projects. Plaintiffs allege that these sales violated both federal and California securities laws, and also constituted negligence and common law fraud. Plaintiffs in McDonald also allege that an accountant and certain attorneys, and their firms, who participated in the sale of the partnership interests committed professional malpractice and aided and abetted the fraudulent conduct of the other defendants. Considerable discovery and other pretrial proceedings have already taken place in Mendelsohn and McDonald.

Wheeler, the third California action before the Panel, has also been assigned to Judge Orrick. The complaint in this action, which was filed in August 1978, is very similar to the complaint in McDonald, and plaintiffs in Wheeler seek to represent the same class that is sought in the consolidated Mendelsohn and McDonald actions. Plaintiffs in Wheeler have filed a motion to consolidate the action with Mendelsohn and McDonald.

The two Jala actions, both pending in the District
of New Jersey, have been consolidated for all purposes.
Defendants in the Jala actions include DiGirolamo, four
other present or former directors of Capital Underwriters,
a financial advisor and his investment firm, a second investment
firm, and certain accountants and alleged real estate experts.
Six of these defendants are also named as defendants in
Mendelsohn and McDonald.  Although Capital Underwriters,
Capital Holdings and the attorney defendants in Mendelsohn
and McDonald are not named as defendants in the Jala complaints,
Capital Underwriters, Capital Holdings and some of these
attorneys have been named as third party defendants in the
Jala actions.

In Jala I, plaintiffs seek to represent a class consisting
of all persons who sustained a loss as a result of the purchase
of limited partnership interests in a particular one of
the real estate projects involved in the California actions
before the Panel.  In Jala II, which has not been brought
as a class action, plaintiffs allege that defendants fraudulently
induced plaintiffs to purchase a debenture issued by Capital
Holdings and secured by the limited partnership interests
involved in Jala I.  Plaintiffs allege that defendants violated
the federal  securities statutes in connection with the
sale of, respectively, the interests in the limited partnership

and the Capital Holding debenture.  Plaintiffs also allege
that the accountant and real estate experts named as defendants
negligently performed their duties in connection with the
sale of these interests and the debenture.  In both actions,
plaintiffs seek damages and injunctive relief.  In Jala
II, plaintiffs also seek rescission of the debenture purchase.

On May 30, 1978, a receiver appointed by the court
in the SEC's Hawaii action, see note 1 supra, filed in the
Jala actions a notice of a federal stay order entered by
the Hawaii district court on February 2, 1977.  That order
stays, except by leave of court, most proceedings against
Capital Underwriters, its predecessor corporation, and Capital
Holdings.   Soon thereafter, the court in the Jala actions
entered an order "administratively terminating" these actions.[2]
Prior to the entry of this order, relatively minimal discovery
and other pretrial proceedings had been initiated in the
Jala actions.

Johnson, also pending in the District of New Jersey,
has been brought by an individual who invested in the same
limited partnership involved in the Jala actions.  The defend-
ants in Johnson, most of which are also defendants in the
Jala actions, include DiGirolamo, Capital Underwriters,
an investment firm and one of this firm's financial advisers.

_____

[2]   We are advised by the clerk's office in the District
of New Jersey that the effect of this order is to stay all
proceedings in the Jala actions.

The complaint seeks damages and injunctive relief as a result of defendants' alleged fraud, negligence, and violation of federal and New Jersey securities laws.

On March 23, 1978, the New Jersey district court stayed Johnson because of the pendency of the federal income tax evasion indictment against DiGirolamo in the District of Hawaii.  See note 1 supra.  A notice of the Hawaii district court's stay order in the SEC action has also been filed in Johnson.  Pretrial proceedings in this action are in an incipient stage.

Francis, the fourth New Jersey action before the Panel, is brought by three individuals who purchased interests in two of the eleven limited partnerships involved in the California actions before the Panel.  These two limited partnerships are not involved in the Jala actions or Johnson. Defendants include DiGirolamo, Capital Underwriters, Capital Holdings, and the investment firm and its financial advisor named as defendants in the Jala actions and Johnson.  Plaintiffs allege that defendants' conduct regarding sales of these partnership interests violated federal and New Jersey securities laws and constituted common law fraud.

In accordance with the stay order issued in the SEC's action in Hawaii, the district court in New Jersey stayed Francis on June 2, 1978.  Prior to that time, only preliminary pretrial proceedings had taken place in Francis.

Batey, the first of two Hawaii actions before the Panel, was brought by several individuals who purchased interests in one of the limited partnerships also involved in only the California actions before the Panel.  DiGirolamo and his wife are the only defendants named in the complaint. These defendants have filed a third party complaint against one of Capital Underwriters' present or former directors, who is also a defendant in the New Jersey actions before the Panel.  The complaint in this action seeks damages under federal and Hawaii securities laws, and principles of common law fraud, for defendants' alleged securities fraud.  Plaintiffs also seek to impose a constructive trust upon assets allegedly purchased with funds wrongfully taken from the plaintiffs.

Carter, also pending in the District of Hawaii, was commenced by the receiver appointed for Capital Underwriters, its predecessor corporation and Capital Holdings by the court in the SEC's action.  Most of the defendants in the other actions before the Panel, as well as the plaintiff in Batey, are either defendants or third party defendants in Carter.  In this action, the receiver is attempting to recover allegedly misapplied funds and assets belonging to the receivership corporations.  Extensive pretrial proceedings have taken place in Carter, and certain funds and other assets have been recovered.  While additional assets are still being sought, the receiver states in his memorandum

before the Panel that "[if] no further assets or causes
of action are uncovered which fit within the perimeters
of the Carter Action, it is not anticipated at the present
time that the receiver will continue to [prosecute]
the action, because to do so would be an unnecessary
and unproductive expense to the estate."

   Plaintiffs in Mendelsohn and McDonald originally moved
the Panel, pursuant to 28 U.S.C. §1407, to transfer Jala I
to the Northern District of California for coordinated or
consolidated pretrial proceedings with Mendelsohn and McDonald.
The Panel subsequently issued orders to show cause why Wheeler,
Jala II, Johnson, Francis, Batey and Carter should not also
be transferred pursuant to Section 1407.  The positions
of movants and respondents are summarized as follows:

   1)  Movants favor centralization of Mendelsohn, McDonald,
   Wheeler and the Jala actions in the Northern District
   of California.  These parties take no position concerning
   transfer of Batey and Carter, and inferentially oppose
   transfer of Johnson and Francis.

   2)  Plaintiff in Johnson "acquiesces" in transfer of
   that action, but takes no position concerning a transferee
   district.

   3)  DiGirolamo takes no position concerning transfer.
   Should transfer be ordered, DiGirolamo urges that
   the Northern District of California is the only appropriate
   transferee forum.

4)   All other responding parties oppose transfer.
One opponent contends that, should the Panel find transfer
appropriate, this litigation should be centralized
in the District of Hawaii.

We find that these actions involve common questions of
fact and that transfer of the actions to the Northern District
of California pursuant to Section 1407 will best serve the
convenience of the parties and witnesses and promote the
just and efficient conduct of the litigation.

While most of the opponents of transfer acknowledge
that these actions may involve some common questions of
fact, all opponents argue that disparate factual and legal
theories predominate.  These parties contend that the claims
in each action center on the purchase of interests in one
or more of eleven different limited partnerships by different
plaintiffs from a variety of different defendants at different
times over a four to five year period.  Moreover, they assert,
the factual basis for plaintiffs' claims arise primarily
out of oral solicitations, not a common written document
or documents applicable to all purchasers.  Under these
circumstances, opponents maintain, each plaintiff must present
individual proof of the manner in which each investment
decision was made, as well as proof of how the conduct of
each defendant caused the damages allegedly sustained.  Thus,
opponents conclude, discovery and other pretrial proceedings
on any matters common to all actions would be minimal.

Opponents deny that the Mendelsohn, McDonald and Wheeler plaintiffs' attempts to represent a class of all persons who purchased partnership interests from defendants supplies a unifying theme to this litigation.  Opponents contend that these actions, as well as the Jala actions, are not proper class actions.

In particular, the receiver-plaintiff in Carter denies that his action and the other actions in this litigation share significant questions of fact.  The complaint in Carter, this plaintiff contends, seeks the recovery of funds allegedly misappropriated from the receivership corporations after those funds had been raised, and does not involve the manner in which the funds were raised.

Because opponents perceive that individual questions of fact and law predominate in this litigation, opponents contend that coordinated or consolidated pretrial proceedings would 1) entangle the parties in complicated proceedings often having no relationship to particular claims or parties in any given action; 2) increase the costs of litigation; and 3) unduly delay resolution of the entire litigation.

Several opponents argue that, to the extent coordination of efforts could be helpful in this litigation, voluntary cooperation among the parties, counsel and courts involved is a suitable alternative to Section 1407 transfer.  Plaintiffs Jala, in fact, move the Panel to order the exchange of discovery

in the respective actions and to order cooperation and con-
sultation among the judges to whom these actions presently
are assigned.

Finally, two defendants contend that the subject of
Section 1407 transfer is inappropriate and improper at
the present time because of the stay order entered by the
Hawaii district court in the SEC's action. These parties
argue that the Panel should honor the stay. Plaintiff in
Carter also argues that the Panel should honor this stay
order, at least insofar as the transfer of Carter is concerned.
In addition, the two defendants maintain that the stay order
in the Jala actions renders "problematic" any action by
the Panel with respect to those actions.

We find these arguments unpersuasive. While we recognize
that some unique factual questions may be involved in certain
of the actions before us, we are convinced that these actions
all share a plethora of complex questions of fact concern-
ing the method of operation of the limited partnerships
sold by Capital Underwriters and the businesses and individuals
with which it was associated. We note, in particular, that
plaintiffs in Mendelsohn and McDonald have argued before
us that each limited partnership involved in this litigation
was merely one aspect of a

> 'Ponzi Scheme' whereby partnerships were formed ostensibly
> for the purpose of investing in specific real estate
> ventures, investors were promised a return of their

investment plus a specified profit in a specific
[period of] time, the monies so collected by Capital
Underwriters, Inc. were in large part misappropriated
and investors in earlier projects were paid their investment
and the specified profit, not from the success or failure
of the project in question, but from the proceeds of
the sales of subsequent partnership interests.

It is clear that questions relating to the alleged existence

of this scheme will be a focus of discovery and other pretrial

proceedings in each of these actions.  The parties in these

actions will have to depose many identical parties and witnesses,

and examine many of the same documents, in order to prepare

these actions for trial.  Thus coordinated or consolidated

pretrial proceedings will prevent duplicative discovery

and avoid the possibility of conflicting pretrial rulings.

See In re Investors Funding Corp. of New York Securities

Litigation, 437 F.Supp. 1199, 1200-02 (J.P.M.L. 1977). The

need for centralization is augmented by the presence of

overlapping class determination requests in the California

actions and one of the New Jersey actions.

While voluntary coordination of pretrial efforts is

always commendable,[3] transfer of these actions to a single

district under Section 1407 will ensure the streamlining

_____

3/    The record before the Panel does not reflect that any
party has initiated efforts at voluntary cooperation among the
parties, counsel or courts involved in this litigation.

of discovery and all other pretrial proceedings as well.[4/]
See In re Commonwealth Oil/Tesoro Petroleum Securities
Litigation, 458 F.Supp. 225, 229 (J.P.M.L. 1978);
In re New York City Municipal Securities Litigation, 439
F.Supp. 267, 269 (J.P.M.L. 1977). The transferee
judge, of course, will have the flexibility and overall
perspective of this litigation to design a pretrial program
that will accommodate the needs of each party for any unique
discovery or judicial attention concurrently with the common
pretrial matters and, as a result, the litigation will harmoni-
ously proceed for the benefit of the parties, their witnesses
and the judiciary. See In re Republic National-Realty Equities
Securities Litigation, 382 F.Supp. 1403, 1405-06 (J.P.M.L. 1974).
No party must participate in pretrial proceedings that that
party believes will not affect its interests. See, e.g.,
Manual for Complex Litigation, Parts I and II, §§2.31 (rev.
ed. 1977).

The fact that the Jala actions, Johnson and Francis
have been stayed in the District of New Jersey does not
affect the authority of the Panel to transfer these actions,

_____

4/   The Jala plaintiffs' motion that the Panel itself order the
exchange of discovery and order cooperation among the judges to
whom these actions are assigned is based on a misunderstanding
of Section 1407. The Panel has neither the power nor the
inclination to dictate in any way the manner in which trans-
feror or transferee judges supervise actions pending before
them. See In re Molinaro/Catanzaro Patent Litigation, 402
F. Supp. 1404, 1406 (J.P.M.L. 1975); In re Plumbing Fixture
Cases, 298 F. Supp. 484, 489 (J.P.M.L. 1968).

nor does Section 1407 transfer itself affect the present
status of these four actions.  In *In re Franklin National
Bank Securities Litigation*, 393 F.Supp. 1093, 1095-96 (J.P.M.L.
1975), the Panel was presented with an analogous situation
and stated as follows:

> Transfer of these actions under Section 1407 in no
> way affects the operation of the stay brought about
> by Bankruptcy Rule 401.  We are simply indicating the
> place where the pretrial proceedings of these actions
> will occur.  The question of the effect of the bankruptcy
> stay and any modification thereof is entirely a problem
> to be worked out by the transferee court, the bankruptcy
> court and the parties.  A Section 1407 transfer will
> produce the salutary consequence of having a single
> judge coordinate these actions with the bankruptcy
> proceedings and thereby eliminate the possibility of
> inconsistent rulings.

Although one defendant suggests otherwise, we believe
that the advantages of coordinated or consolidated pretrial
proceedings can best be obtained by selecting the Northern
District of California as the transferee forum for this
litigation.  In the course of supervising the California
actions, Judge Orrick has become thoroughly acquainted with
the factual background of all the actions inasmuch as more
extensive discovery and other pretrial proceedings have
proceeded in the actions before him than in any other action
before the Panel.  Hence, he is clearly in the best position
to supervise this litigation toward its just and expeditious
termination.  See *In re Griseofulvin Antitrust Litigation*,
395 F.Supp. 1402, 1403 (J.P.M.L. 1975).

- 15 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Northern District of California be, and the same hereby are, transferred to the Northern District of California and, with consent of that court, assigned to the Honorable William H. Orrick, Jr. for coordinated or consolidated pretrial proceedings with the actions already pending there and listed on Schedule A.

DOCKET NO. 356                                    SCHEDULE A

### NORTHERN DISTRICT OF CALIFORNIA          Civil Action No.

Paul Mendelsohn v. Capital Underwriters, Inc.,   C-75-1259-WHO
et al.

George S. McDonald, et al. v. Capital Under-     C-76-1492-WHO
writers, Inc., et al.

Harold Wheeler, et al. v. Carlsmith,             C78-1737-WHO
Carlsmith, Wichman & Case, et al.


### DISTRICT OF NEW JERSEY

Helen B. Jala, et al. v. Gary L. DiGirolamo      77-0665
et al.

Matty W. Jala, et al. v. Gary L.                 77-0554
DiGirolamo, et al.

Michael D. Francis, et al. v. Benjamin           76-966
Rabin, et al.

Alice Y. Johnson v. Washington Capital           77-867
Corp., et al.


### DISTRICT OF HAWAII

Thomas O. Batey, et al. v. Gary L.               76-0103
DiGirolamo, et al.

F. B. Carter, III, et al. v. Gary L.             77-0028
DiGirolamo, et al.